## Tull's Estate.

*Practice, O. C. — Accounts of proceeds of sale of real estate — Approved form of statement.*

1. Fiduciaries in accounting for the proceeds of a sale of real estate should charge themselves with the actual purchase price and take credit for all deductions therefrom, so that the account will show on its face just what they did without supplementary or explanatory statements. A mere statement of the net amount received in the general account, after deducting expenses of the sale, is improper, and justifies an order by the auditing judge requiring a restatement of the account at the expense of the accountant.

*Trustees and executors — Commissions on proceeds of real estate when broker was employed to effect a sale.*

2. When the accountant employs a real estate broker to effect a sale of testator's real estate and pays him a commission, he may not, in addition thereto, charge the usual commission upon the net proceeds stated in the account; he will, however, be allowed a reasonable compensation for his own time and labor expended in the matter, either in the form of a lump sum or on a percentage basis.

*Practice, O. C.—Commissions—Agreements to account by beneficiaries.*

3. Written agreements by beneficiaries to an account do not estop them from objecting thereto at the audit, at least if the account is so stated as not to show on its face that double commissions are charged.

*Practice, O. C. — Commissions — Surcharge — Rights of objecting and non-objecting beneficiaries.*

4. Where one of several beneficiaries objects to excessive commissions, and the objection is sustained, the account will, neverthelss, stand so far as the others are concerned who made no objection.

Adjudication. Account of Charles J. Schaefer, surviving trustee, and Chelten Trust Company, substituted trustee. O. C. Phila. Co., Oct. T., 1909, No. 415.

*M. J. McEnery,* for accountants, and for Ernest B. Tull, residuary legatee.

*E. S. Ward,* for Maurice L. Tull, one of the residuary legatees.

*Robert W. Finletter,* for Commonwealth.

GEST, J., June 28, 1921.—Levi S. Tull died on Oct. 10, 1908, leaving a will, the typewritten copy whereof is not certified by counsel, as required by the rule of court, by which, after a bequest to his wife of household furniture and the occupation of No. 112 Price Street for her life, and an annuity of $600 per year, he devised and bequeathed his residuary estate, real and personal, to his executors in trust to divide the remainder into four equal parts and pay the same to his four children, Ida V. Beale, Francis D. Tull, Maurice L. Tull and Ernest B. Tull, in equal shares; and the testator further directed his executors or their successors, immediately after the death of his wife, or as soon as possible for the benefit of the estate, to sell all his real estate and personal property at public or private sale, and to divide the proceeds into four equal parts, which he devised to his four children. He further provided that if any of his children should be dead at the decease of his wife, leaving legal issue him or her surviving, that said issue should take the same share that his, her or their father or mother would have taken if then living; but if he or she should leave no legal issue surviving, then the share should be divided in the same manner between his surviving children and the legal issue of those who were dead.

Francis D. Tull, Ida V. Beale and Charles J. Schaefer were appointed executors, and the will provided there should be always two executors or trustees. Ida V. Beale died in June, 1917, unmarried and without issue, and

1 D. & C.

on June 17, 1919, the Chelten Trust Company was appointed co-trustee, Francis D. Tull having been previously discharged. Sarah Tull, the widow of the testator, died June 8, 1919, so that the estate is distributable in equal parts or shares among Francis D. Tull, Maurice L. Tull and Ernest B. Tull.

The accountants charge themselves with the balance of the residuary estate appearing by the executors' account, $19,249.60, and also with the proceeds of real estate sold, the debits aggregating $45,038.50, and credit is taken for commissions to the two trustees, Charles J. Schaefer and Chelten Trust Company, at the rate of 3 per cent., or $1351.16. It appears, however, that the real estate sold for an aggregate of $46,500, the amounts debited in the account being the net amounts after deducting certain costs attending the conveyances, and also the sum of $1395, being 3 per cent. on $46,500, as having been paid to and received by Winfield S. N. Knopf. Of course, this method of stating the account is irregular. It was said that the account was drafted by a stenographer or book-keeper employed in Mr. Schaefer's office, but that does not relieve the accountants of their responsibility. The accountants should have charged themselves with the actual purchase prices of the several pieces of real estate and taken credit for all deductions therefrom, so that the account would show on its face just what the trustees did, without supplementary or explanatory statements. In fact, the auditing judge would have been justified in requiring the account to be restated at the expense of the accountants, but refrained from doing so, as the question raised at the audit can be accurately stated in a few words. The facts are that commissions have been deducted at the rate of 3 per cent. on $46,500, or $1395, and that the trustees have charged additional commissions of 3 per cent. on the net amount, thus making a further charge of $1351.16. Practically, nearly 6 per cent. commissions are charged on the proceeds, and this was objected to by Maurice L. Tull, entitled to one-third of the balance. The other distributees acquiesce, as of course they have a right to do.

The accountants relied, first, upon the agreement annexed to the account, and signed before the filing thereof by the three parties in interest, including Maurice L. Tull, who now objects, but the auditing judge attaches little importance to this. The account, as presented to the parties for their signatures, does not show the payment of double commissions, but merely 3 per cent. on the debits claimed by the trustees. It may be true that the memoranda or copies of the statements of the settlements for the various properties were on the table, together with the account, before the parties, when they added their signatures, which statements contained the payment of 3 per cent. to Mr. Knopf, but there is nothing to show that Maurice L. Tull, when he agreed to the account, knew that these commissions had been charged, and Maurice L. Tull testified that he did not remember looking over any other papers or even seeing them. In the opinion of the auditing judge, Maurice L. Tull had a right at the audit to object to the charge of double commissions. If the account had been fully and properly stated, as it should have been, and had shown on its face that Knopf was getting full 3 per cent. commissions in addition to the trustees' charges, the case might have been different, though, even then, it would seem the agreement to the account might have been withdrawn at the audit: Fisher's Estate, 65 Pa. Superior Ct. 297. This would have been an appropriate time for Mr. Schaefer to have explained to the legatees that the amounts with which the accountants debited themselves as the proceeds of sales were only the net amounts after deductions of Mr. Knopf's commissions, but, unfortunately, the trustee did not avail himself of this opportunity.

The accountants further relied upon two agreements signed by the parties Aug. 26, 1919, and Nov. 9, 1920, and the settlement of Dec. 10, 1920, as found on pages 58 and 59 of the testimony, which authorized Winfield S. H. Knopf to sell the real estate for certain prices mentioned in each case. This agreement did not include premises Nos. 5821 and 23 Germantown Avenue, sold for $20,200, which property was agreed to be sold during the lifetime of the widow, though the settlement was not made until the following August. The agreement of sale, it appears, was signed by the three parties in interest. Charles J. Schaefer is a well known real estate agent and broker in Germantown, having his place of business at No. 5702 Germantown Avenue, in the general location of the properties in question. He was appointed by the will one of the executors and trustees, and has since the death of the testator been in active management of the estate. Winfield S. H. Knopf is also a real estate broker, and has been in the employ of Mr. Schaefer for nearly twenty-seven years on weekly salary and given commissions in addition. Mr. Schaefer's name appears on the front of the office building, Mr. Knopf's name being there as notary public. Mr. Schaefer's for sale signs were placed on the properties of the Tull estate, and Mr. Schaefer's printed letter-heads were used by Mr. Knopf, who had none of his own, and he testified also that he wrote a great many letters for Mr. Schaefer and signed the latter's name. One letter, however, dated March 27, 1920 (page 61 of the testimony), was signed by Mr. Knopf with his own name. Mr. Schaefer testified that he did not engage the services of Mr. Knopf to effect the sale of the real estate, and, further, that he paid him on account of the commissions, some money still being due, and that he had no arrangement or agreement with Mr. Knopf by which he was to receive any of the moneys so paid.

The testimony is not altogether clear as to the circumstances under which the parties in interest authorized Mr. Knopf to sell the properties and fix the prices. It appears, however, that Mr. Schaefer told them or sent them word, after the widow's death, that it was time to sell the properties, and to come to his office. When they came, they took the matter up with Mr. Knopf, who prepared the agreement and authorizations which they signed. According to Maurice L. Tull's testimony, he understood that the object was to fix the prices at which the properties were to be sold, and that Mr. Knopf was acting as clerk for Mr. Schaefer, and that nothing was said about his making a charge for commissions. In fact, Mr. Knopf did not testify that there was, and the agreement is silent on the subject, although Mr. Knopf said that when the Germantown Avenue property was sold, he told Maurice L. Tull "the amount of commissions *we* would charge at the time of the sale of the property" (at page 19). Mr. Maurice L. Tull, however, denied (page 51) that Mr. Knopf ever told him that he (Knopf) was going to charge commissions on the sale.

It may be well here to advert to the provisions of the will which in positive terms directs the trustees, immediately after the death of the testator's wife, to sell all the real estate at public or private sale and to divide the proceeds. The trustees are the Chelten Trust Company, which may be said to be a professional trustee, and Mr. Schaefer, who is in the business of managing and buying and selling real estate as a broker. They were, therefore, well equipped to perform the duties imposed on them, but apparently did nothing in the matter except to allow Mr. Knopf to negotiate the sales. As the three sons of the testator were entitled to the proceeds, they might have elected to take the land as land, though, even if they did not, it was certainly proper that they should be consulted as to the price: Barndt's Estate,

1 D. & C.

Tull's Estate.

23 Dist. R. 226. Mr. Knopf testified (pages 23 and 25) that before closing the deals he conferred with Mr. Schaefer and the Chelten Trust Company and obtained their approval or at least their acquiescence; but it was not claimed by any one that they, or certainly the Chelten Trust Company, performed any labor, nor did they incur the slightest responsibility, for the prices were agreed to by the persons entitled to the money, and the question naturally arises, what have they done to earn the commissions which they claim? Commissions are allowed as compensation for services and responsibility; they are not a mere perquisite of a fiduciary. If the trustees, instead of carrying out the directions of the will, chose to depute or allow some one else to perform their duties and then to pay him the full commission allowed by law, it is difficult to see why they should be paid in addition.

Of course, it was argued that Mr. Knopf was not employed by the trustees, but by the parties in interest. There is very grave doubt whether this is so, at least so far as Maurice L. Tull, the objecting party, is concerned, and the auditing judge is strongly inclined to believe that Mr. Knopf was regarded by him as simply Mr. Schaefer's representative or employee in this business, as he was in general, and naturally would be in this matter. But it is very clear from the account itself that the trustees did not regard Mr. Knopf as having been the mere agent of the parties, for the accountants allowed his commissions at the settlement and had deducted them in the account; whereas, if Mr. Knopf had been solely employed by the parties, he should have looked to them for his commissions, and on this theory the accountants have no right to pay the broker of the parties without their knowledge or consent. Indeed, as a matter of fact, only a part of the commissions have actually been paid to Mr. Knopf, the rest being in Mr. Schaefer's own bank account, who is one of the trustees. We must therefore, regard Mr. Knopf, for the purposes of this case, as having been employed by the accountants to effect these sales. In this aspect the case is similar to Adare's Estate (Jan. T., 1921, No. 649), where the present auditing judge said: "In this case the executor simply employed another real estate broker to sell the property, and as he obtained the consent of the parties in interest to the sale, he was relieved of both labor and responsibility. He cannot, therefore, pay the broker his regular commission and then duplicate the charge. If such a practice were authorized by this court, the effect would be disastrous to estates, for the easy course would be generally followed, and would, moreover, offer a tempting inducement to fiduciaries to divide commissions with the broker so employed and thus to obtain a further illegal commission." The present case is even stronger than Adare's Estate, for in that case the broker so employed was a stranger, having no connection with the fiduciary; but in this case Mr. Knopf was employed in Mr. Schaefer's office and attended to his business in general. The auditing judge is, therefore, of opinion that the charge of commissions, $1351.16, must be stricken out.

There was some testimony, however, that some other services were rendered with respect to the real estate, which, perhaps, might justly form the basis for additional compensation. Some of the properties were used for storage purposes, there being some ninety individual storage accounts, and these accounts had to be closed out before the properties could be sold. The testimony did not show exactly how much time or labor was required to effect this, but the auditing judge, in his endeavor to arrive as nearly as possible at exact justice, will allow for these services, as against the objecting party, the sum of $100. Of course, as Francis D. Tull and Ernest B. Tull made no objection to the charge of commissions, the account will stand so far as they are

concerned.  Francis D. Tull, it may be noted, was not present at the audit in person or by attorney.  The recapitulation on the next to the last page of the account contains what is only a suggestion of distribution, and is not strictly a distribution account.  The auditing judge notes that credit is taken on the first page of the account for the value of the newspaper route distributed among the parties in interest, which is improper:  Thompson's Estate, 229 Pa. 543.

| | |
|---|---:|
| The balance of principal of personal estate is | $14,454.60 |
| Add credit taken in administration account for proceeds of newspaper route | 4,000.00 |
| The balance of real estate account is | 43,687.34 |
| | $62,141.94 |
| Add balance of income | 1,057.70 |
| Making | $63,199.64 |

Which is awarded as follows:

To Francis D. Tull, Maurice L. Tull and Ernest B. Tull each one-third, less payments on account of distribution; and the accountants are further charged, in favor of Maurice L. Tull, with one-third of the commissions charged on the real estate, less $100, as follows:

| | |
|---|---:|
| The commissions are | $1351.16 |
| Less extra compensation allowed | 100.00 |
| Leaving | $1251.16 |

Of which one-third is $417.05, which is awarded to Maurice L. Tull.

And now, June 28, 1921, the account is confirmed *nisi*.

NOTE.—In Adare's Estate (Jan. T., 1921, No. 649), cited above, Schaeffer, the executor, employed O'Neill, a real estate agent, to procure a sale of decedent's real estate, which was subsequently effected, the sale being made by O'Neill representing the executor, who was himself a real estate broker and agent.  Schaeffer paid O'Neill a commission of 3 per cent. on the purchase price of $8000, amounting to $240.  He also charged a commission of 5 per cent. as accountant upon the entire debits, $8073.25.  Objection to the credit was taken by one of the residuary legatees.  Gest, J., said: "Upon what theory the executor could not only take credit for the 3 per cent. paid O'Neill, but also expect to charge for himself 5 per cent. as commission, making a total of 8 per cent. on the proceeds of the real estate, the auditing judge fails to understand, nor has he been referred by counsel to any decisions that justify such a charge.  It is true that sometimes an executor is permitted to employ an agent for the collection of rents when the properties are very numerous, and small rentals are collected weekly or monthly, and where these collections are unusually troublesome, but this is a very different case.  So, also, where a public sale is directed, which must necessarily be made by an auctioneer, the executor is entitled to pay the auctioneer his regular commission, but that, again, is not such a case as the present.  In this case the executor simply employed another real estate broker to sell the property, and as he obtained the consent of the parties in interest to the sale, he was relieved of both labor and responsibility.  He cannot, therefore, pay the broker his regular commission and then duplicate the charge.  If such a practice was authorized by this court the effect would be disastrous to estates, for the easy course would be generally followed, and would, moreover, offer a tempting inducement for fiduciaries to divide their commissions with the broker so employed and thus to obtain a further illegal commission.  In this case the auditing judge does not believe that such an arrangement was made.  Mr. Schaeffer is a well known and reputable real estate broker, and the auditing judge is certain that he would not, and did not, make such an agreement, but it is a very dangerous precedent to allow this double commission.

1 D. & C.

The auditing judge, however, observes that in this case the personal property is only $73.25, specifically bequeathed, and apparently this real estate comprised the entire estate, and the auditing judge is of the opinion that the accountant is entitled to a reasonable compensation for his services. He had, as above stated, no real responsibility in the sale, as the parties in interest agreed to the price, but he performed some services as executor and made some ineffectual efforts to effect a sale. The auditing judge fixes his compensation at $125, which, being approximately 1½ per cent., he considers liberal."